FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 22, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TORIE H.,[1]

                    Plaintiff,

          v.

MARTIN O'MALLEY, Commissioner of
Social Security,

                    Defendant.

No.    1:24-cv-03072-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR PAYMENT OF BENEFITS**

Plaintiff Torie H. appeals the denial of benefits by the Administrative Law Judge (ALJ). The parties agree the ALJ erred when analyzing Plaintiff's testimony and the medical opinions, but the parties disagree about the appropriate remedy. Plaintiff seeks a remand for payment of benefits, while the Commissioner seeks a remand for further proceedings. After reviewing the record and relevant authority, the Court remands the case for payment of benefits.

---

[1] To address privacy concerns, the Court refers to Plaintiff by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER - 1

# I.    Background

In September 2020, Plaintiff filed an application for benefits under Title 16, alleging disability due to anxiety, compulsion disorder, depression, and panic attacks.[2] Plaintiff claimed an onset date of March 1, 2012.[3]

Plaintiff's claims were denied at the initial and reconsideration levels.[4] On April 20, 2023, Plaintiff attended a hearing with her attorney before ALJ Evangeline Mariano-Jackson.[5] Plaintiff testified, and a vocational expert Michael Swanson testified.[6] On August 25, 2023, ALJ Mariano-Jackson issued a decision denying benefits.[7]  Plaintiff filed a timely request for review of the ALJ decision, and the Appeals Council denied review.[8] Following the Appeals Council denial, Plaintiff filed a timely appeal to this Court.

The ALJ found:

- Step one: The prior administrative decision of ALJ Glenn Myers dated September 5, 2019, is administratively final but Plaintiff has rebutted

---

[2] AR  227, 244.

[3] AR 227.

[4] AR 114, 130.

[5] AR 33-59.

[6] *Id.*

[7] AR 14-32.

[8] AR 1-6.

ORDER - 2

the presumption of non-disability and the period at issue starts

September 9, 2020, the date of application.

- Step One: Plaintiff had not engaged in substantial gainful activity since September 9, 2020.

- Step two: Plaintiff had the following medically determinable severe impairments: major depressive disorder, post-traumatic stress disorder (PTSD), and panic disorder.

- Step two: Plaintiff's physical impairments including neck, back, and shoulder pain with shortness of breath are non-severe.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered listings 12.04, 12.06, and 12.15.

- RFC: Plaintiff had the RFC to perform a full range of work at all exertional levels except that she has the following nonexertional limitations:

  [Plaintiff] can understand, remember and carry out simple, routine and repetitive tasks requiring no more than 1-2 step instructions and involving only simple work-related decisions and occasional decision making and changes in the work setting; she can never perform assembly line work; she can tolerate occasional, brief and superficial interaction with supervisors, co-workers and the public; and she can work in proximity to, but not in coordination with, co-workers.

- Step four: Plaintiff has no past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as a floor waxer (DOT 381.687-034), a commercial cleaner (DOT 381.687-014), and a maid, housekeeper (DOT 323.687-014).[9]

Plaintiff timely requested review of the ALJ's decision, arguing that the ALJ committed several errors.

## II.    Analysis

The parties agree the ALJ erred in her evaluation of Plaintiff's subjective testimony and also agree that the ALJ erred in evaluating the medical opinions of consultative examiners Patrick Metoyer, PhD, and Thomas Genthe, PhD; and state agency consultants Leslie Postovoit, PhD, and Suzanne Castro, PhD.  The parties disagree, however, as to whether the Court should remand for payment of benefits or for more proceedings. As is explained below, the agreed-upon error calls for a remand for payment of benefits.

## A.    Remand Standard

When a harmful error occurs in the administrative proceeding, remand for further administrative proceedings is the usual course.[10] In comparison, in order

_____

[9] AR 19-27.

[10] *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)).

ORDER – 4

1

2

for the court to consider remand for payment of benefits, three factors must be

satisfied:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be required
> to find the claimant disabled on remand.[11]

When these factors are satisfied, the decision whether to remand for benefits or

further proceedings is within the court's discretion, as it "is a fact-bound

determination that arises in an infinite variety of contexts."[12]

## B.    Remand Analysis

### 1.    The ALJ's Evaluation of Plaintiff's Subjective Testimony

The second remand factor is satisfied: the parties agree the ALJ failed to

provide legally sufficient reasons for rejecting Plaintiff's subjective testimony.

Plaintiff asserts that a remand for calculation of benefits should be entered because

all three prongs required are satisfied.  The Commissioner asserts that the first

prong is not satisfied because even though the ALJ cited to the inconsistency of

Plaintiff's testimony to the objective medical evidence in her analysis, she also cited

in other portions of the opinion to the inconsistency between Plaintiff's testimony

---

[11] *Id*. at 1101. *See Garrison v. Colvin*, 759 F. 3d 995, 1010 (9th Cir. 2014),

[12] *Treichler*, 775 F.3d at 1100 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177 (9th Cir. 2000)).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

regarding the severity of her symptoms and her daily activities.[13] The Commissioner also argued that the medical record indicates that Plaintiff's condition improved with medication and she was not always compliant with her medication.[14] In her reply brief, Plaintiff argued that the issue of improvement with medication was not raised by the ALJ and amounted to a post hoc rationalization on the Commissioner's part.[15]

The Court agrees with Plaintiff that the Commissioner errs in raising an issue which was not considered by the ALJ.  At no point in the decision does the ALJ discuss the fact that Plaintiff's condition improved with medication, nor did she raise any question as to Plaintiff's compliance with medication.[16]  Plaintiff is correct that raising the issue for the first time on appeal amounts to an impermissible post hoc reasoning on the Commissioner's part.[17]

---

[13] ECF No. 14.

[14] Id.

[15] ECF No. 15.

[16] AR 14-32.

[17] *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); SSR 17-2p; *see also Bray v. Comm'r of Soc. Sec. Adm.*, 554 F.3d 1219, 1226-27 (9th Cir. 2009) (recognizing that the ALJ's decision must be analyzed based on his reasoning and findings and "not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking").

ORDER - 6

Here, the ALJ's discussion of Plaintiff's testimony focused on the consistency of Plaintiff's testimony with the objective findings made on mental status examinations by Plaintiff's treating sources.[18] The ALJ reasoned:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> The claimant has major depressive disorder; posttraumatic stress disorder; and panic disorder (see e.g. B2F4; B5F3; B9F4) with reported symptoms to include anxiety and depression; poor memory and concentration; difficulty interacting with others; hypervigilance; and irritability (see e.g. B5F4, 7; B6F3; B9F2).
>
> Providers frequently described her as anxious or depressed with mood lability (see e.g. B4F5; B5F9; B7F3; B9F19); her GAD-7 and PHQ-9 scores are consistent with anxiety and depression (see e.g. B4F65; B5F11; B7F5); and she has sometimes had abnormal findings on mental status examinations such as a tangential thought process or pressured speech (see e.g. B4F5, 20; B5F9; B9F7).
>
> However, while the claimant has some social and cognitive deficits, the severity and frequency of her reported symptoms and limitations are out of proportion to the longitudinal observations and findings by providers during routine appointments.[19]

The ALJ then went on to cite to mental status examination findings from eleven visits between July 2020 and January 2023. Thus, Plaintiff is correct that the ALJ

---

[18] AR 22-23.

[19] *Id.*

ORDER - 7

1
2

focused on the objective findings in mental status examinations when assessing Plaintiff's testimony.

3
4
5
6
7

The Commissioner argues that when making a determination at step three the ALJ also considered that Plaintiff's testimony was not consistent with her daily activities.[20]  Plaintiff argued in her reply that the ALJ's consideration of daily activities at step three did not excuse her failure to consider them when considering Plaintiff's testimony.

8
9
10

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[21] This requires the ALJ to "show his [or her] work"

11

_____

12
13
14
15
16
17
18
19
20
21
22
23

[20] ECF No. 14.

[21] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022). Factors to be considered by the ALJ when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; 6) any non-treatment measures the claimant uses or has used to relieve pain or other symptoms; and 7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

1    and provide a "rationale . . . clear enough that it has the power to convince" the

2    reviewing court.[22]

3        Having reviewed the ALJ's findings at step three, the Court concludes that

4    the Commissioner's argument is unpersuasive.  While the Commissioner is correct

5    that the ALJ did reference daily activities at step two the reference was cursory

6    and the bulk of her analysis focused on the inconsistency of Plaintiff's allegations

7    with the objective findings on mental status examinations, similar to her later

8    analysis of Plaintiff's credibility.[23] The ALJ articulated:

9        In understanding, remembering or applying information, the claimant
         has a mild limitation. In connection with her application, the claimant
10       alleges that her conditions affect her memory and ability to follow
         instructions. However, during routine appointments she has been
11       alert and oriented; she has had intact or otherwise unremarkable
         memory on mental status examinations; and she had generally intact
12       cognition on formal mental status testing in June 2021 with a
         goaloriented thought process; intact memory with a normal fund of
13       knowledge; and intact insight and judgment (B4E; B4F20; B5F4, 9;
         B6F3-4; B7F4, 9; B9F7, 9, 17, 19, 35; finding #4).

14       In interacting with others, the claimant has a moderate limitation. In
15       connection with her application, the claimant alleges that she has
         difficulty with interacting with others and providers sometimes noted
16       her to present as irritable with an anxious or depressed mood and
         affect. However, she was able to interact appropriately with providers,
17       who described her as cooperative and pleasant; she sometimes had a

18   _____

19   Soc. Sec. Rlg. 16-3p, 2016 WL 1119029, at *7; 20 C.F.R. §416.929(c); *Ghanim v.*

20   *Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014).

21   [22] *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (alteration added).

22   [23] AR 20-21.

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

normal mood and affect; and (see e.g. B4E; B2F7; B4F20; B5F4, 9; B6F3; B7F4, 9; B9F7, 9, 17, 19, 35; finding #4).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. In connection with her application, the claimant alleges her conditions affect her concentration and ability to complete tasks and she had difficulty with Serial 7s on formal mental status testing. However, she was also alert and oriented during routine appointments; she had a normal attention span with normal concentration on mental status examination; and during formal mental status testing she was able to follow a three-step command and had no difficulty following the conversation (see e.g. B4E; B4F20; B5F4, 9; B6F; B7F4, 9; B9F7, 9, 17, 19, 35; finding #4).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. In connection with her application, the claimant reported that she had difficulty with stress and changes in routine. However, she also reported that she was able to prepare her own meals and complete her own housework; she reported that she was able to go outside alone; and she did not indicate that she had any difficulty with activities of daily living. She likewise reported to providers and examiners that she was able to complete her own activities of daily living, and during appointments and examinations she was noted to have appropriate or otherwise unremarkable hygiene and grooming (see e.g. B4E; B2F2-3, 6; B4F20; B5F4, 9; B6F4; B7F4, 9; B9F7, 9, 17, 19, 35; finding #4).[24]

Here, when considering the first three broad functional areas the ALJ did not consider anything but the consistency of Plaintiff's allegation and the objective findings on mental status examination. It was with regard to the fourth and last broad functional area that the ALJ considered Plaintiff's hygiene and grooming during appointments as well as the activities of daily living that she reported on

---

[24] *Id.*

1   the Adult Function Report that Plaintiff submitted in October 2020.[25] Moreover,

2   the ALJ's consideration of Plaintiff's statements in her Adult Function Report are

3   flawed.

4         In her Adult Function Report, Plaintiff stated that she was unable to work

5   because most work settings have a need for interpersonal interaction and that has

6   become increasingly difficult for her to manage without anxiety and panic

7   attacks.[26] She stated that she has no difficulty with hygiene and grooming.[27] She

8   stated that she needed reminders to take her medication, and that she cooked

9   microwave meals and simple snacks but did not have the energy to make large

10  meals and tried to make an effort to make a "full meal" twice a month.[28] Plaintiff

11  said she can sweep her patio, clean, and do laundry and tries to do one cleaning

12  chore per week but it can take all day.[29] Plaintiff said that she tries to go out once a

13  day to check her mail but does it at night when she is not exposed and has less

14  anxiety.[30] She said that she has not had a license for 5 years and that her friend

15  shops for her because she does not like going into stores because of gathering of

16

17  ————————————

18  [25] AR 21, quoting AR 255-262.

19  [26] AR 255.

20  [27] AR 256.

21  [28] *Id.*

22  [29] *Id.*

23  [30] AR 258.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

people and that she has not had a bank account in a long time and has stress and becomes overwhelmed in handling money.[31]  Plaintiff said she reads but short amounts, that she texts and talks to immediate family and close friends daily to weekly, and that the only place she goes out to is the doctor's office.[32] She said she has difficulty communicating with others.[33] She indicated that she has problems with squatting, sitting, hearing, seeing, memory, completing tasks, concentration, following instructions, using hands, and getting along with others.[34] Plaintiff said she can follow written directions if it is not too many steps and that she has anxiety and gets overwhelmed with spoken directions and that she gets along with authority figures but avoids interaction with others due to anxiety.[35] She said she does not handle stress or changes in routine well and that she wishes she was able to engage with others in public places but is physically and emotionally unable to.[36]

The Court finds stark contrast between Plaintiff's statements above and the following summation the ALJ made of the statements: ". . .[S]he also reported that she was able to prepare her own meals and complete her own housework; she

---

[31] *Id.*

[32] AR 259.

[33] *Id.*

[34] AR 260.

[35] *Id.*

[36] AR 261.

ORDER - 12

reported that she was able to go outside alone; and she did not indicate that she had any difficulty with activities of daily living."[37] To say that Plaintiff indicated no difficulty with activities of daily living is inconsistent with Plaintiff's reports that she is unable to go to the store or to even check her mailbox during daylight hours because she avoids others and to say she is capable of making meals is inconsistent with the fact that Plaintiff is underweight enough at her height of 5'7" and weight of 91 pounds to meet the listing for gastrointestinal disease and stated that she has to make an effort to force herself to cook two meals each month.

The Court concludes that the only reasons given by the ALJ for discounting Plaintiff's allegations during her analysis at step three are they are inconsistent with the objective finding made during the medical status examinations and a cursory finding that they were inconsistent with the fact that she was groomed during her medical appointments and did not indicate any difficulty with activities of daily living in her Adult Function Report. As noted, the fact that Plaintiff's allegations are not fully supported by objective findings is not a sole basis to find her testimony not credible. As to the fact that Plaintiff was well-groomed, that is consistent with her reports in her Adult Function Report that she has no difficulty grooming.[38] To read the Adult Function Report, which indicates an extreme limitation in leaving her home or being with others without panic, as stating she

---

[37] AR 21.

[38] AR 256.

1
2
3
4

indicates no difficulty with activities of daily living is a gross mischaracterization. For this reason, the ALJ's finding at step three cannot be considered as a basis to rehabilitate the deficiencies in her consideration of Plaintiff's credibility later in the decision.

5
6
7

Because the Court finds that there is no reasonable conflict in evidence which requires further consideration with regard to this issue, the Court concludes that a remand for payment of benefits is warranted.

8

    2.    The ALJ's Evaluation of the Medical Opinions:  This Issue is Moot

9
10
11
12
13
14
15
16

The ALJ was required to consider and evaluate the persuasiveness of the medical opinions and prior administrative medical findings.[39] The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[40] Supportability and consistency are the most important factors,[41] and the ALJ must explain how she considered the supportability and consistency factors when reviewing the medical opinions and support her explanation with substantial evidence.[42] When considering the ALJ's

17
18
19
20
21
22
23

---

[39] 20 C.F.R. §416.920c(a), (b).

[40] 20 C.F.R. §416.920c(c)(1)–(5).

[41] *Id.* §416.920c(b)(2).

[42] *Id.* § 416.920c(b)(2), (c)(1)–(5); *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022) ("The agency must articulate . . . how persuasive it finds all of the medical opinions

findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[43]

Because the Court has already found that the ALJ's error in evaluating Plaintiff's testimony warrants remand for payment of benefits, it will address this issue briefly. First, the Commissioner errs in arguing that the ALJ merely committed an "articulation error" in her explanation regarding the opinions of state agency consultants Dr. Postovoit and Dr. Castro.[44] The Commissioner is correct that the ALJ committed error in failing to address the supportability factor when assessing the two opinions.[45] But that does not constitute a "technical error" because the regulation requires the ALJ to consider both the supportability and consistency factor. In assessing the supportability of an opinion, the ALJ is to consider the supporting explanation provided by the medical source and the extent

---

from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings.") (cleaned up).

[43] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (recognizing court review is constrained to the reasons the ALJ gave).

[44] ECF No. 14.

[45] AR 24.

1    of the relevant objective medical evidence in the doctor's own records supporting

2    the opinion.[46]

3            Additionally, as Plaintiff points out, there are also other substantive errors

4    in the ALJ's analysis, including the fact that when considering the consistency of

5    Dr. Postovoit and Dr. Castro's opinions the ALJ did not consider that they were

6    inconsistent with the opinions of both consultative examiners. Whether an opinion

7    is consistent with the evidence from other medical sources and nonmedical sources

8    is a critical factor.[47]

9            Moreover, the Court finds it perplexing that when considering the opinions

10   of Dr. Postovoit and Dr. Castro the ALJ found them persuasive despite the fact

11   that Dr. Postovoit and Dr. Castro did not review the updated record, but the first

12   reason that she gave for finding the opinions of consultative examiners Dr. Genthe

13   and Dr. Metoyer to be unpersuasive is that they did not review the updated

14   record.[48]

15           With regard to the opinions of Dr. Genthe and Dr. Metoyer, the ALJ gave no

16   explanation why the fact that they did not review the updated medical record

17

18   _____

19   [46] 20 C.F.R. § 416.927(c); *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228

20   (9th Cir. 2009) (recognizing that a medical opinion may be rejected if it is

21   conclusory or inadequately supported).

22   [47]  20 C.F.R. § 416.920c(b)(2), (c)(2).

23   [48] AR 24-26.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

rendered their opinions unpersuasive when, unlike Dr. Postovoit and Dr. Castro, they had a chance to personally examine Plaintiff.  The ALJ additionally failed to consider when considering the consistency factor that Dr. Metoyer and Dr. Genthe's opinions were consistent with each other.[49]

The Commissioner's attempts to cure the ALJ's error in evaluating Dr. Genthe and Dr. Metoyer's opinions by labeling them to be "extreme" and "vague" respectively, is unpersuasive.  As noted, Dr. Genthe's opinions are consistent with those of Dr. Metoyer, who is also an impartial examiner and who is the only other opining source that examined Plaintiff.

Additionally, the Court finds nothing "vague" about Dr. Metoyer's language that Plaintiff had moderate or marked impairments in functioning.  The Administration's own "B" criteria for assessing the severity of mental impairments at step three categorizes impairments as mild, moderate, marked, and extreme.[50] Moreover, Dr. Metoyer examined Plaintiff and rendered an opinion at the request of the Commissioner.  He has conducted consultative examinations for the Commissioner for a number of years and is familiar with the language and standards used by the Administration.  When Dr. Metoyer rendered an opinion at the Commissioner's request as to the severity of Plaintiff's condition utilizing language provided in the Administration's own regulations, that language can

---

[49] 20 C.F.R. § 416.920c(b)(2), (c)(2).

[50] 20 C.F.R. §§ 416.920(d), 416.925, and 416.926.

hardly be characterized as "vague" or "ambiguous" and characterizing it as such does not excuse the ALJ's admitted errors in evaluating Dr. Metoyer's opinions.

### III.    Conclusion

Remand for an award of benefits is appropriate. Plaintiff has met her burden to show that all three prongs of the test have been met.  The Court concludes there is no useful purpose in remanding for furthering proceedings.[51]

Accordingly, **IT IS HEREBY ORDERED**:

1.    The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for payment of benefits**.

2.    The Commissioner's Motion to Remand, **ECF No. 14**, is **GRANTED**.

3.    The Clerk's Office is to term Plaintiff's brief, **ECF No. 10**, and enter **JUDGMENT** in favor of Plaintiff REVERSING and REMANDING the matter to the Commissioner of Social Security for immediate calculation and award of benefits from the alleged disability onset date, and **CLOSE** the case.

IT IS SO ORDERED.  The Clerk's Office is directed to file this order and provide copies to all counsel.

---

[51] *See Vasquez v. Astrue*, 572 F.3d 586, 593–94 (9th Cir. 2009).

**DATED** this 22nd day of October, 2024

_Edward F. Shea_

EDWARD F. SHEA
Senior United States District Judge